IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| WESLEY C. LOWTHER, | ) CIVIL ACTION NO. 9:12-2603-RBH-BM |
| Plaintiff, | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| CAROLYN W. COLVIN,[1] COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on July 28, 2008, alleging disability as of May 6, 2008 due to seizures, back pain, anxiety, and sleep apnea. (R.pp. 109-111). Plaintiff's claim was denied initially and upon reconsideration, following which he requested a hearing before an Administrative Law Judge (ALJ). (R.pp. 20-38). The ALJ thereafter denied Plaintiff's claim in a decision issued August 26, 2010. (R.pp. 11-19). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this lawsuit.

the final decision of the Commissioner. (R.pp. 1-4).

Plaintiff then filed this action in this United States District Court, asserting that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

## **Scope of review**

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v.

2



Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## **Discussion**

A review of the record shows that Plaintiff, who was thirty-seven (37) years old when he alleges he became disabled, has a high school education with past relevant work experience as an electrician, event staffer, and delivery driver/stocker. (R.pp. 18, 24-27). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[2] of a seizure disorder, degenerative disc disease, and anxiety, thereby rendering him unable to perform any of his past relevant work, he nevertheless retained the residual functional capacity (RFC) to perform a restricted range of medium work[3], and was therefore not entitled to disability benefits. (R.pp. 13, 15, 18-19).

Plaintiff asserts that in reaching this decision, the ALJ erred by relying on the Medical-Vocational Guidelines (i.e. the "Grids")[4] to direct a finding of not disabled, by failing to

---

[2] An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[3] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

[4] "The grids are matrices of the 'four factors identified by Congress -- physical ability, age, education, and work experience -- and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy.'" Daniels v. Apfel, 154 F.3d 1129, 1132 (10th Cir. 1998) (quoting Heckler v. Campbell, 461 U.S. 458, 461-462 (1983)). "Through the Grids, the Secretary has taken administrative notice of the number of jobs that
(continued...)



adequately explain his RFC finding, and by failing to properly consider the Veteran's Administration finding of disability. After careful review and consideration of the evidence and arguments presented, the undersigned agrees with the Plaintiff that it was error for the ALJ to rely on the Grids to direct a finding of not disabled under the facts of this case, and that a remand is therefore required in order to obtain Vocational Expert (VE) testimony.

Because the ALJ determined that Plaintiff is unable to perform his past relevant work, the burden shifted to the Commissioner to show that other jobs exist in significant numbers which Plaintiff could perform. Pass v. Chater, 65 F.3d 1200, 1201-1203 (4th Cir. 1995). In appropriate circumstances, the ALJ can meet this burden by using the Grids to direct a finding that a claimant is not disabled. See Hays, 907 F.2d at 1458 [affirming denial of benefits to claimant where the Medical-Vocational Guidelines directed a finding of not disabled]. However, the Grids do not generally apply to a claimant who suffers from severe non-exertional impairments, or who cannot perform the full range of work activity within a Grid category. Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989); see 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h). As noted, the ALJ determined that Plaintiff's seizure disorder and anxiety were both severe impairments, meaning that they significantly limit Plaintiff's ability to do basic work activities. Bowen, 482 U.S. at 140-142. Additionally, these are both non-exertional impairments. Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005)[Referencing anxiety as a non-exertional impairment]; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) [Seizure disorder is a non-exertional impairment].

Concededly, the Grids may still be used to direct a finding of not disabled where non-

---

$^{4}$(...continued)
exist in the national economy at the various functional levels (i.e., sedentary, light, medium, heavy, and very heavy.)" Daniels, 154 F.3d at 1132.



4

exertional impairments, even severe, do not significantly reduce a claimant's occupational base; see Ortiz v. Secretary of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) ["If a non-strength impairment, even though considered significant, has the effect only of reducing [the] occupational base marginally, the Grid remains highly relevant and can be relied on exclusively to yield a finding as to disability."]; see also Gentry v. Secretary, No. 85-5751, 1986 WL 17763 at **1-2 (6th Cir. 1986) [In a case where the impairments included migraine headaches, the court held that "[n]on-exertional limitations preclude use of the grid only when the limitations are severe enough to prevent a wide range of gainful employment at the designated level."]; cf. Guyton v. Apfel, 20 F.Supp.2d 156, 163 (D.Mass. 1998)[discussing reliance on Grids where non-exertional limitations were found to not significantly effect claimant's ability to engage in substantial gainful activity]; Egleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988) [presence of non-exertional limitations does not preclude use of the Grids if non-exertional limitations do not further limit the claimant's ability to perform work]; and the ALJ found in his decision that the limitations resulting from Plaintiff's impairments had "little or no effect on the occupational base of unskilled medium work", and that a finding of "not disabled" under the Guidelines was therefore appropriate. (R.p. 19). However, this finding was reversible error in this case.

With respect to Plaintiff's seizure disorder, the ALJ found that Plaintiff's seizures were well controlled with medications and could be accommodated at work by avoiding ladders, heights, and moving machinery. (R.pp. 15-16). As for Plaintiff's anxiety, the ALJ simply noted that Plaintiff would have "some difficulty with social interaction", but did not otherwise place any work limitations on him as a result of this condition, even though it had been deemed a "severe" impairment. (R.p. 15). While the ALJ is correct that a restriction on access to ladders, heights and



moving machinery would not, by itself, significantly erode the occupational base for medium unskilled work so as to disallow reliance on the Grids to direct a finding of not disabled; cf. Williams v. Astrue, No. 10-2966, 2012 WL 694038, at * 10 (D.S.C. Mar. 5, 2012) [Finding no error in applying the grid rule to direct a finding of not disabled where the ALJ found that the additional restrictions of not working at heights or around moving machinery would not significantly erode the occupational base of unskilled medium work]; Sherby v. Astrue, No. 09-1061, 767 F.Supp.2d 592, 598 (D.S.C. July 14, 2010) [Noting in dicta that non-exertional limitations restricting a person from climbing ladders, ropes, or poles would have very little effect on the entire occupational base for unskilled, light work]; the ALJ's additional conclusory finding that a limitation on social interaction would not significantly erode the medium occupational base because unskilled work "usually involves working with objects rather than people" is not supportable. Anthony v. Commissioner of Social Sec., No. 11-1400, 2012 WL 4483790 at * 27 (N.D. Ohio Sept. 27, 2012)[Finding that because someone performing unskilled work must be able to appropriately respond to supervisors and co-workers on a sustained basis, it was error for the ALJ to rely on the grids for a claimant who had moderate social limitations. A substantial loss of the ability to deal with supervisors and co-workers "severely limits[s] the potential occupational basis."], (quoting SSR 85-15, 1985 WL 56857 at * 4); cf. Phillips v. Astrue, No. 11-1018, 2012 WL 3765184, at * 4 (D.S.C. June 11, 2012), adopted by, 2012 WL 3775968 (D.S.C. Aug. 30, 2012).

Further, the ALJ specifically found in his decision that Plaintiff had moderate difficulties in social functioning. See (R.p. 14). Moderate difficulties in maintaining social function would affect the occupational base for unskilled work, precluding reliance on the Grids to direct a finding of not disabled. Walker, 888 F.2d at 49; see Anthony, 2012 WL 4483790 at * 27; Tucker



v. Schweiker, 689 F.2d 777, 780 (8th Cir. 1982) (quoting Gagnon v. Secretary of Health and Human Servs, 666 F.2d 662, 666 n. 8 (1st Cir. 1981) ["Even a 'mild' mental impairment may prevent [a] claimant from engaging in the full range of jobs contemplated by the exertional category for which the claimant otherwise qualifies."]; Cox v. Astrue, No. 105021, 2010 WL 3120593 at * * 10-11 (W.D.Wash. July 9, 2010)[Finding that Claimant could not perform the full range of unskilled jobs with non-exertional limitations of simple routine work with limited social contact]; cf. Childs v Astrue, No. 07-299, 2008 WL 686160, at * 5, n. 4 (M.D.Fla. March 10, 2008) [Noting that "moderate limitations in social functioning would appear to be of vocational significance . . ."].

Additionally, the ALJ's decision contains internal inconsistencies with respect to his RFC finding, in particular with respect to how it would affect the ALJ's reliance on the Grids to direct a finding of not disabled. For example, the ALJ cites with approval the fact that Plaintiff has consistently been found to have a GAF score 55.[5] (R.p. 17). In terms of degree of severity of symptoms or functional impairment, a GAF score of 55 indicates that the individual is moderately impaired in their functional impairment. Matchie v. Apfel, 92 F.Supp. 2d 1208, 1211 (D.Ks. 2000). However, the ALJ did not explain how someone who is moderately impaired in their psychological, social, and occupational functioning would be able to perform a full range of medium work. Nor does such a degree of impairment square with the ALJ's finding that Plaintiff's limitations would have little or no effect on the occupational base of unskilled medium work, particularly in light of the fact that any restrictions resulting from this impairment would need to be considered in conjunction with the fact that Plaintiff had already been restricted from jobs involving ladders,

---

[5]"Clinicians use a GAF [Global Assessment of Functioning] to rate the psychological, social, and occupational functioning of a patient." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 597 n.1 (9th Cir. 1999).



heights, or moving machinery. Fenton v. Apfel, 149 F.3d 907, 910 (8th Cir. 1998) ["The Secretary is required to produce vocational expert testimony concerning availability of jobs which a person with a claimant's particular characteristics can perform, . . . either because of suffered non-exertional impairment, or because he or she is precluded from performing a full range of a particular work classification...."]; cf. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) [ "[R]esort to the grids is particularly inappropriate when evaluating nonexertional limitations such as...mental impairments."] (quoting Harquis v. Sullivan, 945 F.2d 1482, 1490 (10th Cir. 1991); see also Hooper v. Heckler, 752 F.2d 83, 88 (4th Cir. 1985); Grant v. Schwieker, 699 F.2d 189, 192 (4th Cir. 1983).

The ALJ also stated in his decision that he was giving "significant weight" to the opinions of the state agency psychological consultants, as their findings were supported by "the weight of medical record." (R.p. 18). However, the ALJ only found that Plaintiff had a moderate limitation in terms of social interactions, even though one of the two state agency psychological consultants (whose opinion the ALJ gave significant weight) concluded that Plaintiff also had moderate difficulties in maintaining concentration, persistence or pace, a finding that the ALJ did not include in his decision. (R.pp. 14, 408). That same state agency physician found that Plaintiff was moderately limited in his ability to carry out detailed instructions, to maintain attention and concentration for extended periods, and to respond appropriately to changes in the work setting; (R.pp. 412-414); while the other state agency physician agreed that Plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting, and also found that Plaintiff was moderately limited in his ability to understand and remember detailed instructions. (R.pp. 704, 708-709). Finally, both state agency physicians found that Plaintiff suffered from severe panic disorder and impulse control disorder. (R.pp. 403, 405, 699, 701)



None of these findings were discussed by the ALJ in his decision, nor did he explain why he failed to include these findings in his limitations in light of his statement that he was giving these state agency physician opinions "great weight" as they were "supported by the weight of the medical evidence of record". (R.p. 18). See SSR.96-6p, 1996 WL 374180 at *1 ["Administrative law judges and the Appeals Council may not ignore [State agency medical and psychological consultants and other program physicians and psychologists] opinions and must explain the weight given to these opinions in their decisions."]; cf. Cotter v. Harris, 642 F.2d 700 (3rd Cir. 1981) [listing cases remanded because of ALJ's failure to provide explanation or reason for rejecting or not addressing relevant probative evidence]. These findings obviously would be material to the ALJ's decision to use the Grids in this case. Cf Lucy v. Chater, 113 F.3d 905, 908 (8th Cir. 1997); Bonds v. Astrue, No. 07-1135, 2008 WL 2952446, at * 11-12 (D.S.C. July 29, 2008)[Whether Plaintiff's moderate impairment in the area of concentration, persistence and pace eroded the occupational base and to what degree it was eroded was a determination for a vocational expert]; Chapa v. Astrue, No. 05-253, 2008 WL 952947, at * 6 (N.D.T. Apr. 8 2008)[Case reversed where ALJ applied Grids to direct a finding of not disabled, instead of obtaining vocational expert testimony, where claimant had moderate impairment in the area of concentration, persistence and pace]. Coffin v. Commissioner of Social Security, No. 09-2061, 2011 WL 806674 at * * 8-9 (M.D.Fla. Mar. 2, 2011).

In sum, the record does not support the findings of the ALJ in this case that Plaintiff's mental limitations would only limit Plaintiff to medium work that did not involve ladders, heights, and moving machinery, as he did not include restrictions to account for Plaintiff's moderate limitation in social functioning; Anthony, 2012 WL 4483790 at * 27; Hyser v. Astrue, No. 11-102,



2012 WL 951468 at * 6 (N.D.Ind. Mar. 20, 2012)[Finding limitation to jobs "involving only occasional contact with public and co-workers" accounted for moderate social functioning]; Cox, No. 105021, 2010 WL 3120593 at * * 10-11[Finding that Claimant could not perform the full range of unskilled jobs with non-exertional limitations of simple routine work with limited social contact]; Childs, No. 07-299, 2008 WL 686160, at * 5, n. 4 [Noting that "moderate limitations in social functioning would appear to be of vocational significance . . ."]. While it may be that a vocational expert will be able to identify unskilled medium jobs which Plaintiff could perform with his limitations, it was nevertheless improper for the ALJ to use the Grids to direct a finding of not disabled after he had found that Plaintiff has moderate limitations in social functioning. Bonds, 2008 WL 2952446, at * 11; cf. Millhouse v. Astrue, No. 08-378, 2009 WL 763740, at * 4 (M.D.F. Mar. 23, 2009)[Use of Grids to direct a finding of not disabled improper where ALJ has found that Plaintiff has a severe mental impairment, which means that it significantly affects the Plaintiff's ability to work]. The ALJ also did not properly explain his failure to include impairments and limitations found by the state agency physicians in his decision after having determined that these opinions were entitled to great weight. Cotter, 642 F.2d 700 [Listing cases remanded because of ALJ's failure to provide explanation or reason for rejecting or not addressing relevant probative evidence]; Brown v. Astrue, No. 09-1520, 2010 WL 2817221, at * 3 (D.S.C. June 23, 2010), adopted by 2010 WL 2817218 (D.S.C. July 15, 2010); SSR.96-6p, 1996 WL 374180 at *1 ["Administrative law judges and the Appeals Council may not ignore [State agency medical and psychological consultants and other program physicians and psychologists] opinions and must explain the weight given to these opinions in their decisions."].

Therefore, remand is required so that a vocational expert can be called to address



these issues in response to a proper hypothetical which includes all of the Plaintiff's impairments. Fenton, 149 F.3d at 910 ["The Secretary is required to produce vocational expert testimony concerning availability of jobs which a person with a claimant's particular characteristics can perform, . . . either because of suffered non-exertional impairment, or because he or she is precluded from performing a full range of a particular work classification...."]; Walker, 889 F.2d at 50-51 [In order for a vocational expert's opinion to be helpful and relevant, it must be "in response to proper hypothetical questions which thoroughly set out all of claimant's impairments"]; Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) [hypothetical question submitted to the VE must state the claimant's impairments with precision]. With respect to Plaintiff's remaining claims of error, on remand the ALJ will be able to reconsider and re-evaluate the evidence as part of the reconsideration of this claim. Hancock v. Barnhart, 206 F.Supp.2d 757, 763-764 (W.D.Va. 2002)[On remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted *de novo*].

## **Conclusion**

Based on the foregoing, and pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner with remand in Social Security actions under Sentence Four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be **reversed**, and that this case be **remanded** to the Commissioner for the purpose of obtaining vocational expert testimony to establish whether Plaintiff can perform other work with his exertional and non-exertional limitations, for a re-evaluation and examination of the findings and opinions of the state agency physicians, and for such further administrative action as may be necessary or appropriate. See Shalala v. Schaefer, 113 S.Ct. 2625 (1993).



The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

October 2, 2013
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

>Robin L. Blume, Clerk
>United States District Court
>Post Office Box 835
>Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

